<u>NOT FOR PUBLICATION</u>

<u>UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY</u>

_____
                                          :
THE JAYSON COMPANY,                       :
                                          :
            Plaintiff,                    :
                                          :          Civil Action No. 05-3883 (JAG)
            v.                            :
                                          :                **OPINION**
                                          :
VERTICAL MARKET SOFTWARE &                :
VERTICAL SOFTWARE SERVICES,               :
INC.                                      :
                    Defendant.            :
_____:


<u>**GREENAWAY, JR., U.S.D.J.**</u>

This matter comes before this Court on the motion of defendant, Vertical Market

Software ("VMS"), to compel arbitration in Pensacola, Florida or, in the alternative, dismiss the

complaint for lack of personal jurisdiction, pursuant to FED. R. CIV. P. 12(b)(2).[1]  For the reasons

set forth below, this motion will be denied.

_____

[1] In its brief, VMS incorrectly frames its request for relief as a motion to dismiss and
compel arbitration, pursuant to FED. R. CIV. P. 12(b)(2).  However, in support of its request for
arbitration, VMS relies on the legal standard for enforcing a contractual forum selection clause.
To move for enforcement of a forum selection clause properly, the party should make a motion to
transfer, pursuant to 28 U.S.C. § 1404(a).  <u>Salovaara v. Jackson Nat'l Life Ins. Co.</u>, 246 F.3d
289, 299-300 (3d Cir. 2001).  Alternatively, the movant may seek dismissal, pursuant to FED. R.
CIV. P. 12(b)(1), 12(b)(3) or 12(b)(6).  <u>Id.</u> at 298 n.6.  Further, procedurally, according to 9
U.S.C. § 3, a court issuing an arbitration order will stay, rather than dismiss, the proceedings
pending arbitration.  Therefore, based upon the relief sought by VMS, this Court will consider
the request as a motion to dismiss, pursuant to FED. R. CIV. P. 12(b)(6), in accordance with the
forum selection clause or, in the alternative, a motion to dismiss, pursuant to FED. R. CIV. P.
12(b)(2), for lack of personal jurisdiction.

1

## INTRODUCTION

Plaintiff, The Jayson Company ("Jayson"), is a New Jersey corporation in the business of distributing oil, heating products, water products, and pool supplies. (Ferdinado Cert. ¶ 2.) VMS is a Florida company that designs, markets, and sells software for certain industries. (Snyder Cert. ¶ 10.) VMS does not have offices in New Jersey; rather, it sells its products in New Jersey through defendant Vertical Market Services, Inc. (Id. at ¶ 10.)

In 2000, a Jayson officer became aware of management business software developed by VMS. Jayson contacted VMS directly and was referred to a sales representative, Vance Anderbury. (Ferdinado Cert. ¶ 3.) Through Mr. Anderbury, and in telephone conversations directly with VMS, Jayson negotiated and entered into several agreements with VMS. (Id.)

On December 7, 2000, Jayson and VMS entered into an agreement ("Modification Agreement") which specified that VMS would modify its standard software to comply with Jayson's unique business requirements. (Snyder Cert. ¶ 8, Ex. A.) The Modification Agreement enumerated these requirements and set forth a pricing schedule based on the type of modification necessary, categorized as "Type A" or "Type B" modifications. (Id.) On May 14, 2001, VMS shipped Jayson its standard fuel oil software, which did not contain any of the Type A modifications.[2] Jayson installed the software on May 29, 2001. (Id. at ¶ 10.) In order to receive a serial code to activate the software formally, Jayson was required to accept the terms of a licensing agreement ("License Agreement"). The License Agreement contains a provision (the

---

[2] The parties' certifications do not say whether this software contained the "Type B" modifications, but it appears that it did not, since Jim Snyder's certification refers to the software sent at that time as "standard software," and does not affirmatively mention that the "Type B" modifications had been completed.

"forum selection/arbitration clause"), which states:

> The form [sic] selected by the parties for any proceeding or suit in law or equity arising from or incident to this Agreement as among the parties thereto shall be located in Pensacola, Escambia County, Florida and shall be submitted to binding arbitration[.]

(Snyder Cert. ¶ 11, Ex. B.)  A Jayson representative signed the License Agreement.  (Id.)

After the License Agreement was signed, VMS worked on making the agreed upon modifications.  Between 2002 and 2004, VMS sent employees at least eight times to Jayson's offices in New Jersey.[3]  These trips were paid for by Jayson.  (Ferdinado Cert. ¶ 5.)  In September 2002, after visiting New Jersey, Dan Bishop of VMS memorialized another agreement between VMS and Jayson, wherein VMS agreed to make additional custom changes to the software for Jayson's benefit.  (Ferdinado Cert. ¶ 5, Ex. C.)  Similarly, in February 2004, Jayson accepted VMS's quoted proposal for additional changes to the software.  (Ferdinado Cert. ¶ 4, Ex. A.)

After 2004, Jayson became dissatisfied and filed this action in New Jersey state court in June 2005, alleging that VMS was unable to fulfill their promises to modify the software according to Jayson's specified requirements.  (Compl. ¶¶ 3-4.)  VMS removed the action to this Court on August 5, 2005 and the present motion followed.

## STANDARD OF REVIEW

I.    **Standard for a Motion to Enforce a Forum Selection Clause**

"[In] a federal forum the enforceability of a forum selection clause is determined by a

---

[3] The parties dispute what the purpose of these visits were.  Jayson alleges that the software modifications were done during these trips.  (Ferdinado Cert. ¶ 5.)  VMS denies this and contends that the work was done in Florida.  (Snyder Supp. Cert. ¶ 3.c.)  The invoices for travel expenses sent to Jayson by VMS refer to "training" in the description of the trips.  (Ferdinado Cert. ¶ 5, Ex. B.)  Resolution of this issue is not germane to this motion.

generally applicable federal law." Coastal Steel Corp. v. Tilghman Wheelabrator, Ltd., 709 F.2d 190, 201 (3d Cir. 1983). Thus, this Court will look to federal law in determining whether to enforce the forum selection/arbitration clause in the License Agreement. The Supreme Court of the United States has held that "[forum selection] clauses are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 12 (1972). This rule reflects the principle that courts should enforce freely negotiated contract terms and give effect to the legitimate expectations of the parties. Id. Expanding on this ruling, the Third Circuit has adopted a workable test:

> [A] forum selection clause is presumptively valid and will be enforced by the forum unless the party objecting to its enforcement establishes (1) that it is the result of fraud or overreaching; (2) that enforcement would violate strong public policy of the forum; or (3) that enforcement would in the particular circumstances of the case result in jurisdiction so seriously inconvenient as to be unreasonable.

MoneyGram Payment Sys. v. Consorcio Oriental, S.A., 65 Fed. Appx. 844, 846 (3d Cir. 2003) (quoting Coastal Steel, 709 F.2d at 202). A court may refuse to enforce a forum selection clause if any of the factors have been demonstrated. (Id.) The presumption to enforce a forum selection clause only applies, however, when the dispute falls within the scope of the clause. Cottman Transmission Systems, Inc. v. Martino, 36 F.3d 291, 293 (3d Cir. 1994).

## II.     Standard for a 12(b)(2) Motion to Dismiss

A federal court sitting in diversity must conduct a two-step analysis to ascertain whether personal jurisdiction exists. First, the court must look to the forum state's long-arm statute to determine if personal jurisdiction is permitted over the defendant. Second, the court must determine whether the exercise of jurisdiction violates the Due Process Clause of the Fourteenth

4

Amendment.  See IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 259 (3d Cir. 1998); Vetrotex

Certainteed Corp. v. Consolidated Fiber Glass Products Co., 75 F.3d 147, 150 (3d Cir. 1996).

        In this forum, the inquiry is collapsed into a single step, because New Jersey's long arm

statute permits the exercise of personal jurisdiction to the fullest limits of due process, as defined

under the Constitution of the United States.  As such, federal law defines the parameters of this

Court's in personam jurisdiction.  See IMO Indus., Inc., 155 F.3d at 259.  The Fourteenth

Amendment permits a state to exercise jurisdiction over an out-of-state defendant only where

"the defendant purposefully avails itself of the privilege of conducting activities within the forum

State, thus invoking the benefits and protections of its laws."  Burger King Corp. v. Rudzewicz,

471 U.S. 462, 475 (1985) (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)).  It is the

burden of the plaintiff to prove that the defendant has purposefully availed himself of the forum

state.  See Burke v. Ouartev, 969 F. Supp. 921, 924 (D.N.J. 1997).

        To prove that the defendant has purposefully availed itself of that state, a plaintiff may

rely upon a defendant's specific contacts with the forum state.  The burden to produce actual

evidence of the defendant's contacts with the forum state rests on the plaintiffs.  See Time Share

Vacation Club v. Atlantic Resorts, Ltd., 735 F.2d 61, 66 n.9 (3d Cir. 1984).  When a defendant

challenges an action for lack of personal jurisdiction, and the court does not hold an evidentiary

hearing, the plaintiff "need only establish a prima facie case of personal jurisdiction and the

plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its

favor."  Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 97 (3d Cir. 2004) (citation omitted).

        Personal jurisdiction pursuant to enumerated contacts with the forum state is known as

specific jurisdiction.  Specific jurisdiction is invoked when a claim is related to or arises out of

5

the defendant's contacts with the forum.  See Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 416 (1984); Dollar Sav. Bank v. First Sec. Bank of Utah, 746 F.2d 208, 211 (3d Cir. 1984).  A court must first determine whether the defendant had the minimum contacts with the forum necessary for the defendant to have "reasonably anticipate[d] being haled into court there."  World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980) (citation omitted).  What constitutes minimum contacts varies "with the quality and nature of the defendant's activity."  Hanson, 357 U.S. at 253.  In assessing the sufficiency of minimum contacts for personal jurisdiction, the court must focus "on the relations among the defendant, the forum, and the litigation."  Keeton v. Hustler, 465 U.S. 770, 780 (1984).  Otherwise stated, there must be at least "a single deliberate contact" with the forum state that relates to the cause of action.  United States Golf Ass'n v. United States Amateur Golf Ass'n, 690 F. Supp. 317, 320 (D.N.J. 1988).  The unilateral acts of the plaintiff, however, will not amount to minimum contacts.  Helicopteros Nacionales de Colombia, 466 U.S. at 417; Hansen, 257 U.S. at 253.

Assuming minimum contacts have been established, a court may inquire whether "the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'"  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476 (1985) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 320 (1945)).  See also Pennzoil Prod. Co. v. Colelli & Assoc., Inc., 149 F.3d 197, 201 (3d Cir. 1998).  For personal jurisdiction to comport with "fair play and substantial justice," it must be reasonable to require the defendant to defend the suit in the forum state.  World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292 (1980).

To determine reasonableness, a court considers the following factors: the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiffs interest in obtaining

6

convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering substantive social policies.  Id.  Only in "rare cases [do the] 'minimum requirements inherent in the concept of "fair play and substantial justice" . . . defeat the reasonableness of jurisdiction even [though] the defendant has purposefully engaged in forum activities.'"  Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal., Solano County, 480 U.S. 102, 116 (1987).

If the plaintiff cannot establish specific jurisdiction, a court may exercise general jurisdiction over the defendant if the defendant has maintained "continuous and systematic" contacts with the forum state.  Helicopteros Nacionales de Colombia, 466 U.S. at 416.  To establish general jurisdiction the plaintiff "must show significantly more than mere minimum contacts" with the forum state.  Provident Nat'l Bank v. California Fed. Sav. & Loan Ass'n, 819 F.2d 434, 437 (3d Cir. 1987).  Moreover, the facts required to establish general jurisdiction must be "extensive and persuasive."  Reliance Steel Prods. Co. v. Watson, Ess, Marshall & Enggas, 675 F.2d 587, 589 (3d Cir. 1982).

A particular defendant may be dismissed from a lawsuit if the court cannot assert personal jurisdiction over the defendant, pursuant to this standard.  See FED. R. CIV. P. 12(b)(2).

## DISCUSSION

**I.    This Dispute is Not Governed by the Forum Selection/Arbitration Clause in the**
       **License Agreement.**

The parties do not dispute the validity of the License Agreement or the forum

selection/arbitration clause contained therein.  VMS correctly asserts that the Third Circuit has

endorsed the enforcement of a forum selection clause unless it is the product of fraud, violates

public policy or results in seriously inconvenient jurisdiction.  Coastal Steel Corp. v. Tilghman

Weelabrator Ltd., 709 F.2d 190, 202 (3d Cir. 1983).  However, in Coastal and the other cases

VMS cites, where a forum selection clause is enforced, the applicability of the contract to the

dispute is not at issue.  Id.; see also M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1 (1972);

MoneyGram Payment Sys. v. Consorcio Oriental, 65 Fed. Appx. 844 (3d Cir. 2003).  Courts will

not enforce a forum selection clause when the subject of the dispute does not arise from the

contract containing the clause.  Cottman Transmission Systems, Inc. v. Martino, 36 F.3d 291,

293 (3d Cir. 1994) (refusing to apply a forum selection clause from one contract between the

parties to a dispute arising out of a second contract); Toner v. Miller, No. 03-3498, 2003 WL

22358446, at *1 (E.D.Pa. Sept. 8, 2003) (same).[4]

---

[4] If VMS had framed the issue as a motion to enforce an arbitration clause, rather than as
a motion to enforce a forum selection clause, the analysis and result would be the same.  "An
agreement to arbitrate before a specified tribunal is, in effect, a specialized kind of
forum-selection clause[.]"  Scherk v. Alberto-Culver Co., 417 U.S. 506, 519 (1974). "The first
task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed
to arbitrate that dispute."  Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, 473 U.S. 614,
626 (1985).  A court makes this determination by comparing the scope of the arbitration clause
with the factual allegations underlying the dispute.  Id. at 622 n.9;  PaineWebber, Inc. v.
Hartmann, 921 F.2d 507, 511 (3d Cir. 1990).  Since the scope of the License Agreement
arbitration clause is limited to disputes arising from that agreement, and this dispute does not

VMS argues that the forum selection/arbitration clause in the License Agreement should govern this action.  This argument fails.  The License Agreement is not the subject of this dispute, and the terms of the clause limit its application to "any proceeding or suit in law or equity *arising from or incident to this Agreement*."  (Snyder Cert. ¶ 11, Ex. B) (emphasis added).  The critical question is whether the claims fall within the scope of the forum selection clause as written in the License Agreement.  To answer this question, the Third Circuit has adopted a test which looks to whether the asserted claim "ultimately depends on the existence of [the contract]" between the parties.  Coastal Steel, 709 F.2d at 203.

Tests adopted by other circuits offer additional aid in the resolution of this issue.  For example, the Ninth Circuit looks to "whether resolution of the claims relates to interpretation of the contract,"  Manetti-Farrow, Inc. v. Gucci Am., Inc., 858 F.2d 509, 514 (9th Cir. 1988), and the First Circuit looks to whether the claim involves "the same operative facts as a parallel claim for breach of contract."  Lambert v. Kysar, 983 F.2d 1110, 1121-22 (1st Cir. 1993).[5]  Under any of these tests,  Jayson's claims do not fall within the scope of the forum selection clause in the License Agreement.[6]

---

involve factual allegations that relate to the terms of the License Agreement, if the motion sought to enforce the arbitration clause, this Court would reach the same conclusion as it does with respect to the forum selection clause, which is that the clause does not apply here.

[5] In the context of determining the scope of an arbitration clause, the Third Circuit has adopted a test similar to the Ninth Circuit test in Medtronic AVE Inc. v. Cordis Corp., 367 F.3d 147, 150 (3d Cir. 2004) and one similar to the First Circuit test in PaineWebber, 921 F.2d at 511.

[6] The language in the License Agreement provides that disputes "arising from" and those "incident to" the Agreement shall be resolved in Florida.  VMS does not argue that the broad language "incident to" encompasses this dispute.  If it did make this argument this Court would reject it since it has no merit.  Courts have interpreted similar language only to mean that tort claims that are dependent on the underlying breach of contract claim are encompassed by the

This dispute arises from the agreements between the parties for modifications to VMS's standard software and none of Jayson's allegations rely on the License Agreement. The License Agreement governs Jayson's "use and possession" of the software, and specifically defines "software" as the "computer programs contained in the sealed package." (Id.) This language excludes this dispute from the terms of the License Agreement since the software at issue has been modified from its sealed package form, and Jayson is not asserting use or possession rights granted to Jayson in the License Agreement. [7]

In its brief, VMS effectively concedes that this dispute falls outside the terms of the License Agreement: "[p]laintiff's complaint is based on the allegation that the software, *as modified,* does not work." (Def. Reply Br. 11) (emphasis added). The applicable agreements to this dispute are the Modification Agreement and the subsequent agreements for changes to the software, as they list Jayson's requirements for the software. It is VMS's alleged failure to comply with these requirements that is the subject of this dispute. (Compl. ¶¶ 3-5.) No agreement between the parties besides the License Agreement contains a forum selection or arbitration clause. In a case involving two separate, but related contracts, the Third Circuit recently held that the language "claims or disputes arising out of or relating to this Agreement" contained in one contract does not apply to claims arising out of a second contract. U.S. Small

clause. Turtur v. Rothschild Registry Int'l, 26 F.3d 304, 310 (2d Cir. 1994); Bergquist Co. v. Sunroc Corp. 777 F.Supp. 1236, 1247-48 (E.D.Pa. 1991) (citing N & D Fashions, Inc. v. DHJ Industries, Inc., 548 F.2d 722, 728 (8th Cir. 1976)).

[7] In fact, the connection between the two contracts was even stronger in Chimicles than the connection between the License Agreement and the Modification Agreement is here. In Chimicles, the second contract incorporated by reference the terms of the first contract, but the Court refused to read "this Agreement" beyond the agreement in which the language appeared. Chimicles, 2006 U.S. App. LEXIS 11590, at *7.

Bus. Ass'n. v. Chimicles, No. 05-3883, 2006 U.S. App. LEXIS 11590, at *8-10 (3d Cir. May 10, 2006).

In order to apply the forum selection clause to this dispute, this Court would have to find that the terms of the License Agreement and the Modification Agreement are part of a single contract between the parties.  Only then could the forum selection clause's self-limiting application to "this Agreement" refer to both the License Agreement and the Modification Agreement, and thus encompass this dispute.

The Third Circuit has recognized that the terms of a software license can become additions to a parties' agreement.  Step-Saver Data Systems, Inc. v. Wyse Technology, 939 F.2d 91, 97 (3d Cir. 1991) (determining whether a software license became part of the parties' agreement).  However, VMS does not argue this.[8]  Rather, VMS incorrectly asserts that the forum selection clause applies to all suits between the parties.  (Def. Mem. of L. 4.)  This assertion contradicts the language of the License Agreement which limits the forum selection provision to disputes arising from "this Agreement."  The License Agreement, by its terms, is a fully integrated contract.[9]  Thus, the scope of the forum selection clause includes only disputes arising from the rights and obligations created by the License Agreement, which this dispute is

_____

[8] This Court makes no judgment on the merits of such an argument.

[9] The License Agreement provides that: "[t]his is the only Agreement between [Jayson] and VMS and it cannot and shall not be modified by purchase orders, advertising or any other representations by anyone, unless a written amendment has been signed by a duly authorized VMS officer." (Snyder Cert. ¶ 11, Ex. B.)  The Third Circuit has relied on similar language as evidence of a fully integrated contract.  Chimicles, 2006 U.S. App. LEXIS 11590, at *9.

11

not.[10]  As such, the forum selection/arbitration clause contained in the License Agreement will

not be applied to this dispute and VMS's motion to dismiss on the basis of the forum selection

clause will be denied.

**II.**     **Defendant VMS is Subject to the Jurisdiction of this Court.**

Having determined that the forum selection clause of the License Agreement is not

applicable to this dispute, this Court must now consider whether it can permissibly assert

personal jurisdiction over VMS.  VMS argues that this Court cannot exercise jurisdiction over it

because there are an insufficient number of contacts between VMS and the State of New Jersey.

VMS contends that it is a Florida corporation that does not have offices, own property or pay

taxes in New Jersey, and has not advertised in New Jersey.  (Snyder Cert. ¶¶ 4-7.)

Jayson alleges that there a number of contacts between VMS and New Jersey that relate

to the subject of this litigation sufficient for this Court to assert specific jurisdiction.  The

following facts are not challenged: (1) although Jayson originally solicited VMS, VMS

responded by putting Jayson in touch with a sales representative; (2) VMS and Jayson negotiated

and executed at least three contracts regarding VMS software between 2000 and 2004; (3) VMS

agreed to make custom modifications to its software for Jayson; (4) VMS sent its employees or

---

[10] VMS argues that because Jayson could not have used the software and discovered the modifications were allegedly flawed unless it agreed to the terms of the License Agreement, this dispute is dependent on the License Agreement, and therefore its terms apply.  (Pl.'s Reply Br. 11.)  This argument has no merit.  The circumstances or pre-conditions of how Jayson became aware of the alleged flaws are not relevant to which contract governs the dispute.  This is a form of "but-for" analysis which courts have rejected as an interpretation of the "arising from" language in forum selection clauses.  Omron Healthcare v. Maclaren Exports, 28 F.3d 600, 602 (7th Cir. 1994) (citing Merrell Dow Pharm., Inc. v. Thompson, 478 U.S. 804 (1986); Spearman v. Exxon Coal USA, Inc., 16 F.3d 722 (7th Cir. 1994)).

agents to Jayson's offices in Union, New Jersey on at least eight separate occasions; and (5) VMS sent at least eleven separate invoices to Jayson for travel expenses between 2002 and 2004.

VMS asserts that it did not "agree to be bound or subject itself to the laws of the State of New Jersey," and thus this Court cannot exercise jurisdiction. (Snyder Cert. ¶ 12.) VMS's argument reflects their misunderstanding of the personal jurisdiction standard. The inquiry is not a subjective one. Rather, it is an objective analysis of the contacts between the defendant, the litigation and the forum, and whether the defendant should have "reasonably anticipate[d] being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).

The sufficiency of VMS's contacts with this forum are evident. Although VMS did not initially solicit Jayson, it took affirmative actions to do business with a New Jersey corporation by providing a sales representative and engaging in subsequent formation of multiple contracts. The Supreme Court's holding in Burger King is instructive in the context of contracting parties from different states. The Court held in Burger King that although a contract with a forum resident *alone* is not sufficient to assert jurisdiction, "where the defendant 'deliberately' has engaged in significant activities within a State . . . or has created 'continuing obligations' between himself and residents of the forum . . . he manifestly has availed himself of the privilege of conducting business there and . . . it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well." 471 U.S. at 475-476. (citation omitted). VMS's actions were "deliberate." They purposely directed Jayson to the salesman Vance Anderbury to facilitate a sale.[11] VMS engaged in ongoing discussions to gather Jayson's

---

[11] Neither Mr. Anderbury's office location nor assigned sales territory have been disclosed.

business requirements, and negotiated a contract for modifications to its software.  Further, the Modification Agreement between the parties created a "continuing obligation" between VMS and Jayson.  VMS's duties under this contract were not limited to a single transaction, rather the contract contemplated performance over an extended period.[12]

In McGee v. International Life Ins. Co., the Supreme Court held that it "is sufficient for purposes of due process that the suit was based on a contract which had substantial connection with that State."  355 U.S. 220, 223 (1957).  The Modification Agreement at issue here has a substantial connection with the state of New Jersey.  The modified software was intended for use in New Jersey by a company that services New Jersey customers.[13]

Besides the contracts, the eight visits by VMS to Jayson in New Jersey are additional contacts between VMS and this forum.  The import of these visits is that "territorial presence frequently will enhance a potential defendant's affiliation with a State and reinforce the reasonable foreseeability of suit there."  Burger King, 471 U.S. at 476.  After sending employees to New Jersey, and accepting payment from a New Jersey corporation for travel expenses on an ongoing basis, it should come as no surprise to VMS that they would be required to defend a suit

--------

[12] The agreement specified that it would be in force for one year, but did not provide a timetable for completion of the modifications.  (Snyder Cert. ¶ 8, Ex. A.)

[13] VMS argues that Jayson cannot prove that VMS knew the software was to be used in New Jersey.  (Pl.'s Reply Br. 7.)  This argument fails because the question is what is foreseeable, not what is actually foreseen.  World-Wide Volkswagen, 444 U.S. at 297.  It would be disingenuous for VMS to argue that it was not foreseeable that the modified software provided to Jayson would be used in New Jersey.

in New Jersey arising out of their relationship with Jayson.[14]  Plaintiff has met its burden of showing that the defendant has sufficient contacts with New Jersey.

Having satisfied the minimum contacts requirement, the analysis now turns to whether asserting jurisdiction over VMS comports with notions of "fair play and substantial justice." Burger King, 471 U.S. at 476 (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 320 (1945)). This determination is made by considering several factors, including: the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several states in furthering substantive social policies. World-Wide Volkswagen, 444 U.S. at 292.  In cases where the number of contacts with the forum is limited, the plaintiff bears the burden of showing how these factors weigh in favor of asserting jurisdiction.  However, after finding that a defendant has sufficient minimum contacts with the forum state, the burden shifts to the defendant to "present a compelling case" that these factors weigh against asserting jurisdiction. Burger King, 471 U.S. at 478.

Since this Court finds that there are sufficient contacts between VMS and New Jersey, the burden shifts to VMS to demonstrate the above listed factors weigh in its favor.  VMS has not shown that any of these factors weigh in its favor; in fact, VMS never mentioned any of these factors in its papers.  This Court will not make VMS's argument for it.  Thus, asserting jurisdiction is reasonable based on the contacts between VMS, New Jersey, and this litigation

---

[14] VMS's misplaced reliance on the License Agreement, as discussed previously, does not protect it from the consequences of its purposeful actions.

and comports with notions of "fair play and substantial justice," and does not violate VMS's due process rights.

## <u>CONCLUSION</u>

For the reasons set forth above, VMS's motion will be denied.  This Court finds that the License Agreement, which contains the forum selection/arbitration clause asserted by VMS, does not govern this dispute.  VMS's motion to compel arbitration based on this clause will be denied. Further, because Plaintiff has shown there are sufficient contacts between VMS and New Jersey for this Court to assert specific jurisdiction in this dispute, the motion to dismiss, pursuant to FED. R. CIV. P. 12(b)(2), will also be denied.


 S/Joseph A. Greenaway, Jr.
JOSEPH A. GREENAWAY, JR., U.S.D.J.


Dated: May18, 2006

16